IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA SPEAR, on behalf of himself and other Plaintiffs similarly situated, ) ) ) Plaintiff, ) ) v. ) ) WOMEN'S HEALTH INSTITUTE of ) ILLINOIS, LTD., MEDIPRO BILLING and ) CONSULTING LTD., and DAWN ) SWANSON and DENISE ELSER, ) individually, ) ) Defendants. | Case No.<br><br>Judge<br><br>**Jury Trial Requested** |

## COMPLAINT

Plaintiff Jessica Spear ("Plaintiff"), on behalf of herself and all others similarly situated, through her attorneys, Barlow, Kobata & Denis LLP, for her Complaint against Defendants Women's Health Institute of Illinois, Ltd., MEDIPRO Billing and Consulting LLC, and Dawn Swanson and Denies Elser, individually (collectively "Defendants"), states as follows:

## NATURE OF ACTION

1. This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Portal to Portal Act, 29 U.S.C. § 251 *et seq.,* and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), for Defendants' failure to pay overtime wages to Plaintiff and a class of similarly situated employees, and also under the Americans with Disabilities Act, as amended, 42 U.S.C. #12101 et seq. (herein the "ADA").

## JURISDICTION AND VENUE

2. Federal jurisdiction arises under the provisions of the FLSA, 29 U.S.C. § 201 *et. seq.*, including §§ 206 and 207, the Portal-to-Portal Act, 29 U.S.C. § 251 *et. seq.*, the ADA, and

1

28 U.S.C. §§ 1331 and 1343. There is supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue lies in the Northern District of Illinois Eastern Division in that the Plaintiff is a resident of this District and Division, Defendants are engaged in business in this District and Division, and a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District and Division.

**PARTIES**

4. Defendant Women's Health Institute of Illinois, Ltd., (herein "WHII") operates a medical business located in several offices in the Chicago, Illinois area, including at 5851 W. 95th Street, Suite 300, in Oak Lawn, Illinois, at 3825 Highland Ave., in Downers Grove, Illinois, and 10762 W. 167th Street in Orland Park, Illinois.

5. Defendant MEDIPRO Billing and Consulting, LLC (herein "Medipro") operates a business located in several offices in the Chicago, Illinois area, including at 5851 W. 95th Street, Suite 300, in Oak Lawn, Illinois.

5. Defendant Denise Elser was an owner and manager of WHII and Medipro and directed the work of Plaintiff and other similarly situated hourly employees. Defendant Dawn Swanson was the Practice Manager for WHII and the owner and manager of Medipo and directed the work of Plaintiff and other similarly situated hourly employees.

6. The Plaintiff is a resident who resides in the Northern District of Illinois and has performed work for Defendants on an hourly basis and was a non-exempt employee between October 5, 2015 and June 7, 2016.

2

7. At all relevant times herein, Plaintiff, and all other unnamed Plaintiffs of the class, known and unknown (hereinafter referred to as "members of the Plaintiff Class") are either former or current hourly employees of Defendants.

## IV. COLLECTIVE ACTION ALLEGATIONS

8. Pursuant to 29 U.S.C. § 216 (b), this action may be maintained by the Plaintiff Class, or anyone for and on behalf of themselves and other Plaintiffs similarly situated, who have been damaged by Defendants' failure to comply with 29 U.S.C. § 206 *et. seq.* and § 251 *et. seq.*

9. There exist past and present employees of the Defendants who are similarly situated to the named Plaintiff in that those similarly situated employees were hourly employees, have performed the same or similar job duties as the named Plaintiff and have been compensated in the same or similar manner as the named Plaintiff.

10. During her employment Plaintiff was paid on an hourly basis and performed non-exempt work. Plaintiff and similarly situated employees who were paid on an hourly basis, including billers, billing assistants, medical coders, billing assistants, receptionists, and medical assistants, were subject to common personnel policies, including the Defendants' same policies regarding being paid on an hourly basis and working off the clock.

11. Defendants had and have a common policy and practice regarding the payment of wages and overtime wages for all of its hourly employees.

12. For all members of the Plaintiff Class to become fully aware of their right to join this cause of action, a certain period of time as determined by this Court is necessary to send notice to the entire Plaintiff Class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

13. Pursuant to 29 U.S.C. § 216(b), the Court should, in addition to any judgment awarded the Plaintiff Class, allow reasonable attorneys' fees and costs of the action to be paid by Defendants.

14. In order to bring this cause of action, it has been necessary for the named Plaintiff and will become necessary for the other members of the Plaintiff Class, to employ attorneys to secure a judgment due them with regard to unpaid overtime compensation.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

**FACTUAL ALLEGATIONS**

15. Paragraphs 1-14 are re-alleged and incorporated as though set forth fully herein.

16. The Plaintiff and all other unnamed Plaintiffs of the class, known and unknown ("Plaintiff Class") are either present or past employees of the Defendants.

17. At all pertinent times to this cause of action, Plaintiff and all other members of the Plaintiff Class, known and unknown, were employed by Defendants, said employment being integral and indispensable to Defendants' businesses.

18. At all pertinent times Defendants have continuously been "employer[s] in an industry affecting commerce" within the meaning of the FLSA, 29 U.S.C. § 201 *et seq*.

19. Plaintiff has signed a Consent to Become a Party Plaintiff under the FLSA, a copy of which is attached hereto as Exhibit A.

20. During their employment, Plaintiff and the Plaintiff Class regularly worked more than forty (40) hours during the workweek and were not paid at a rate of one and one-half times their regular hourly rate for those hours worked over forty (40).

21. Plaintif and the Plaintiff Class were subject to the same personnel policies and overtime policies, including the policy to require employees to work off the clock, to work

4

through their lunch, and to refuse to pay them overtime for all the hours they worked over 40 hours in a workweek.

22. Plaintiff and the Plaintiff Class were not always paid for all of the overtime hours they worked.

23. Defendants have employed members of the Plaintiff Class, including the Plaintiff, to perform work for them, but have failed to pay them at a rate of one and one-half times their regular hourly rates for hours worked over forty (40) hours in a workweek pursuant to the requirements of the FLSA.

24. Pursuant to the FLSA, 29 U.S.C. § 201 *et. seq.*, and the Portal-to-Portal Act 29 U.S.C. § 251 *et. seq.*, Plaintiff, and all other Plaintiffs similarly situated, known and unknown, are entitled to overtime pay at a rate of one and one-half times their regular hourly rate for all hours worked over forty (40) in a single workweek during the two (2) years preceding the filing of this Complaint.

25. Defendants' failure to pay overtime pay at a rate of one and one-half times the regular hourly rate for all overtime hours worked by Plaintiff and the Plaintiff Class is a violation of the FLSA.

26. The individual defendants Swanson and Elser were aware that Plaintiff and other class members worked in excess of 40 hours per week and were working off the clock, including working through their lunch, and the two individual defendants controlled and directed the work, the working conditions, the hours of work for the Plaintiff and other Class members and how they were paid.

27. The two corporate defendants operated as joint employers and controlled the work, the working conditions, the hours of work for the Plaintiff and other Class members and how they were paid.

WHEREFORE Plaintiff, on behalf of herself and all others similarly situated, known and unknown, respectfully requests this Court to enter an order as follows:

- A. the Court determine the rights of the parties and direct the Defendants to pay for all overtime hours worked and wages paid to the Plaintiff;
- B. awarding a judgment equal to the amount of all unpaid compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;
- C. awarding Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the FLSA; and
- D. for such other, additional, and further relief as the Court deems appropriate under the circumstances.

## COUNT II
## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

28. Paragraphs 1-27 are re-alleged and incorporated as though set forth fully herein.

29. Defendants have, both in the past and presently, willfully failed to pay the Plaintiff and the class she represents for all overtime hours worked at a rate of one and one-half times their regular hourly rate as described above, despite the fact that Defendants knew, or should have known, of the requirements of the FLSA.

30. Defendants continue a pattern of deliberate, intentional, and willful violation of the FLSA.

31. Pursuant to the FLSA, Plaintiff and the class she represents are entitled to compensation for all overtime hours worked in any given week at a rate of one and one-half times their regular hourly rate during the three (3) years preceding the filing of this Complaint.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, known and unknown, respectfully requests this Court to enter an order as follows:

A. awarding a judgment equal to the amount of all unpaid overtime compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

B. awarding prejudgment interest with respect to the total amount of unpaid overtime compensation;

C. awarding Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the FLSA; and

D. for such other, additional, and further relief as the Court deems appropriate under the circumstances.

## COUNT III
## LIQUIDATED DAMAGES

32. Paragraphs 1-31 are re-alleged and incorporated as though set forth fully herein.

33. In denying Plaintiff and the class she represents compensation at a rate of one and one-half their regular hourly rate for all hours worked over forty (40) in a workweek, Defendants' acts were not based upon good faith or reasonable grounds.

34. The Plaintiff and the class she represents are entitled to liquidated damages equal to the amount of unpaid compensation pursuant to 29 U.S.C. § 216.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, known and unknown, respectfully requests this Court to enter an order as follows:

A. awarding liquidated damages equal to the amount of all unpaid overtime compensation;

B. awarding Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the FLSA; and

C. for such other, additional, and further relief as the Court deems appropriate under the circumstances.

## COUNT IV
## SUPPLEMENTAL STATE COURT CLAIM
## ILLINOIS MINIMUM WAGE LAW, 820 ILCS SECTION 105 *et. seq.*

35. Paragraphs 1-7, 9-11, 14, and 16-34 are re-alleged and incorporated as though set forth fully herein.

36. There exists a statute called the Illinois Minimum Wage Law, 820 ILCS § 105 *et. seq.*, which requires employers to pay to employees at a rate of one and one-half times their regular hourly rate for all hours worked over forty (40) in a workweek.

37. This Court has jurisdiction over the Illinois state claim by virtue of 28 U.S.C. § 1367.

38. At all relevant times herein, Defendants were employers as defined in the Illinois Minimum Wage Law, 820 ILCS 105/3(c), and Plaintiff was an employee within the meaning of that Act.

39. Pursuant to 820 ILCS 105/4a, for all weeks during which Plaintiff worked, she was entitled to be paid at a rate of one and one-half times her regular hourly rate for all hours she worked over forty (40) in a single workweek.

40. Defendants violated the Illinois Minimum Wage Law by refusing to compensate Plaintiff for all overtime hours worked at a rate of one and one-half times her regular hourly rate. Defendants failed and refused to pay Plaintiff her overtime pay.

41. Pursuant to 820 ILCS 105/12(a), Plaintiff is entitled to recover unpaid overtime compensation for three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month of the amount of under payments.

42. The aforementioned Illinois statute provides for a statute of limitations of three years from the date of the underpayment of the wage, without qualification.

43. The aforementioned Illinois statute also provides for Plaintiff to recover the amount of the wage underpayment as well as costs and reasonable attorneys' fees as may be allowed by the Court.

44. Defendants' failure to pay Plaintiff overtime compensation for all hours worked over forty (40) in a workweek is a violation of the Illinois Minimum Wage Law.

WHEREFORE, Plaintiff respectfully requests this Court to enter an order as follows:

A. a judgment in the amount of all unpaid wages for the three years preceding the filing of this lawsuit;

B. punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C. awarding prejudgment interest on the unpaid overtime wages in accordance with 815 ILCS 205/2;

D. awarding Plaintiff's reasonable attorney's fees and costs incurred as a result of Defendants' violation of that Act;

E. that the Court determine the rights of the parties and direct the Defendants to pay for all hours worked and wages paid to Plaintiff during the relevant time period; and

F. for such other, additional, and further relief as the Court deems appropriate under the circumstances.

**COUNT V (Americans With Disabilities Act and Women's Health Institute of Illinois, Ltd., and MEDIPRO Billing and Consulting LLC)**

45. Paragraphs 1-6 are re-alleged and incorporated as though fully set forth herein.

46. This lawsuit arises under the Americans With Disabilities Act, as amended, 42 U.S.C. §12101 et seq. (herein, the "ADA"). Plaintiff is a former employee of the defendants WHII and Medipro. Plaintiff is seeking damages and injunctive relief to redress employment discrimination practices, WHII's and Medipro's failure to accommodate her, and retaliation by WHII and Medipro for requesting an accommodation under the ADA and Illinois Human Rights Act.

47. Federal jurisdiction arises under the provisions of the ADA, and federal question jurisdiction, 28 U.S.C. §1331 and §1343. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 based on federal question jurisdiction.

48. Pursuant to 28 U.S.C. §1391, venue lies in the Northern District of Illinois in that Plaintiff is a resident in this District, Defendants WHII and Medipro are and have been engaged in a business in this District, and a substantial part of the alleged events or omissions giving rise to the claims occurred in this District.

49. Since at least October 5, 2015, the Defendants WHII and Medipro have been corporations authorized to do business in Illinois, have been conducting business in Oak Lawn, Illinois, and have continuously been and are now employers engaged in interstate commerce or an activity affecting commerce, and they each was an "employer" within the meaning of the ADA.

50. Since at least October 1, 2015 Defendants WHII and Medipro have each employed or have employed more than fifteen employees within the meaning of the ADA.

51. Defendants WHII and Medipro were joint employers, conducted their operations at the same Suite 300 offices in Oak Lawn, interchanged staff and employees, and coordinated their supervision, direction, and control of all hourly employees under the supervision of the same managers, including by Dawn Swanson, and used the same managers to exercise control and direction over their workers and employees.

52. In 2015 and 2016 Plaintiff was an "employee" within the meaning of the ADA.

## PROCEDURAL BACKGROUND

53. On September 20, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against WHII and also a Charge of Discrimination against Medipro alleging violations of the ADA.

54. Plaintiff timely filed her Charges of Discrimination against WHII and Medipro with the EEOC alleging violations of the ADA.

55. The EEOC Charges of Discrimination that Plaintiff filed were cross-filed with the Illinois Department of Human Rights. The Charges of Discrimination that Plaintiff filed were timely filed with the Illinois Department of Human Rights.

56. On December 12, 2017, the EEOC issued Plaintiff a Notice of Right to Sue with respect to each of her pending Charges of Discrimination that were filed against WHII and Medipro. A true and correct copy of the EEOC Notices is attached hereto as Exhibit B and incorporated herein.

57. This action has been timely filed by Plaintiff within ninety (90) days of Plaintiff's receipt of the EEOC's Notices of Right to Sue.

58. Plaintiff has fulfilled all conditions precedent to the institution of this lawsuit against the Defendants WHII and Medipro under the ADA.

FACTUAL BACKGROUND

59. Plaintiff was hired on October 5, 2015 by Defendants WHII and Medipro. When she was hired, she was qualified to perform her job duties. At all pertinent times between October 5, 2015 and June 7, 2016 Plaintiff performed her job duties in a satisfactory manner.

60. On September 12, 2014, the Plaintiff was tested for or diagnosed with either an MVA or MVC. On September 28, 2014 Plaintiff was diagnosed with having herniated/bulging disks. After her diagnosis, Plaintiff had ongoing treatments, including months of physical therapy, several steroid epidural injections, and injections for L4-L5. She also had follow up treatment for these medical conditions in December 2015 and on other occasions.

61. On approximately October 15, 2015, Dawn Swanson and Defendants WHII and Medipro received and reviewed an Illinois Standard Health Employee Application for Small Employers that stated, among other things, that on September 12, 2014 Plaintiff had been tested

for or diagnosed with a "MVA," that on September 28, 2014 she had been diagnosed with "Herniated/Bulging Discs," that she had received ongoing treatment involving "Physical therapy" for six months, including a "March 2015 –injection L4-L5," and that "sx discogram and discectomy" had been recommended.

62. Since their receipt of the Illinois Standard Health Employee Application for Small Employers, Dawn Swanson and the Defendants WHII and Medipro have been aware that Plaintiff had been diagnosed with the medical conditions described in that Application and was receiving ongoing treatment for those medical conditions.

63. After her September 2014 diagnosis for herniated and bulging discs, Plaintiff continued to have subsequent back pain and continued to undergo additional medical treatment, including taking an October 2014 MRI which showed a L45 annular bulge and C67 disk and foraminal stenosis, and having a discogram in December 2015 regarding a CSF leak.

64. On May 6, 2016, while at work the Plaintiff became dizzy, lost her vision, and experienced other symptoms of a stroke, including TIA-like symptoms, aphasia, right-sided weakness, and trouble talking. On May 6, 2016 Plaintiff told Swanson that she was dizzy, lost her vision, and experienced other symptoms of a stroke and that she was going to the emergency room. Plaintiff went to the emergency room on May 6, 2016 while experiencing TIA-like symptoms, including aphasia and right-sided weakness, and trouble talking.

65. After telling Swanson that she needed additional medical treatment, on May 8, 2016 Plaintiff underwent additional medical treatment involving a CTA.

66. On May 16, 2016 Plaintiff was treated by a Neurosurgery/Neurovascular Clinic and Dr. Ryan Trombly, a specialist in Neurosurgery and who was associated with the Advocate Medical Group. Dr. Trombly wrote a "Neuro Consult Letter" on May 16, 2016 reporting that his

13

assessment was that the Plaintiff, among other things, had a "cerebrospinal fluid leak" and "Back pain, chronic," that she had had "TIA-like symptoms on May 6 including aphasia and right-sided weakness, now with occasional headache possibly related to CSF leak from December 2015 diskogram, needs evaluation with stroke neurology or hematology to evaluate cardiac arrhythmia or hypercoagulable state" and also to "repeat cervical and lumbar MRI to evaluate back pain and possibly evaluate pseudomeningocele," and recommending a XR SPINE LUMBAR FLEX/EXT 2V" test for May 16, 2016.

67. A pseudomeningocele is a medical term describing an abnormal collection of cerebrospinal fluid (CSF) that communicates with the CSF space around the brain or spinal cord.

68. On May 16, 2016, Dr. Trombly told the Plaintiff of his assessment, that he had scheduled her for further medical appointments and treatment during the next four weeks, and recommended that she undergo that medical treatment and have additional medical testing over the next four weeks, and he scheduled a further medical appointment with her for June 15, 2016.

69. After being examined by Dr. Trombly, on May 16, 2016, the Plaintiff gave Swanson a copy of a "Medical Excuse" letter from Dr. Trombly that was dated May 16, 2016 and which stated the following: "Jessica Spear developed worrisome symptoms on 5/6/16 that required hospitalization. She was seen by me today 5/16/16 in the office and is unable to return to work because she requires further medical evaluation by other medical specialties."

70. In addition to giving Swanson Dr. Trombly's May 16, 2016 letter, on May 16, 2016 the Plaintiff told Swanson that Dr. Trombly said that the Plaintiff may have had a stroke, that her herniated and bulging disc medical conditions and treatment may have resulted in a December 2015 CSF leak, that she needed to see a hematologist and other medical specialists

14

and have additional medical testing, and that she needed to be off of work and take a leave of absence for one month until her June 15, 2016 medical appointment with Dr. Trombly.

71. On May 16, 2016 the Plaintiff asked Swanson to be off of work for a month until her June 15, 2016 medical appointment with Dr. Trombly. In response to the information that the Plaintiff told her and after reviewing Dr. Trombly's May 16, 2016 medical note, Swanson said that she understood the gravity of the TIA-like symptoms that the Plaintiff had experienced at work, that her husband had had a stroke and she understood that the Plaintiff needed four weeks to consult with and be treated by several other medical specialists, that Plaintiff's request to take off four weeks to consult with and be treated by several other medical specialists was okay and acceptable, and that the Plaintiff could take off of work for four weeks to undergo this additional medical testing and treatment and return to work on June 15, 2016 after her June 15, 2016 medical appointment with Dr. Trombly.

72. Plaintiff underwent additional medical treatment and testing, including a Spine Lumbar Flex to evaluate her Cerebrospinal fluid leak, pain management to evaluate a blood patch for a CSF leak, a May 20, 2016 MRI brain scan, and other medical testing. On May 29, 2016, the Plaintiff called and told Dawn that she would return from her leave of absence and return to work on June 15, 2016.

73. By requesting to take off of work for four weeks until June 15, 2016, the Plaintiff requested an accommodation within the meaning of the ADA and Illinois Human Rights Act, Plaintiff's request was for a limited and definite period of time, Plaintiff's accommodation request was not for an inefinite period of time, Plaintiff's accommodation request was reasonable, and approving the Plaintiff's accommodation request did not create an undue hardship on her employers and would not have created an undue hardship on her employers.

74. As of May 16, 2016, Swanson and Defendants WHII and Medipro were aware that the Plaintiff had requested an accommodation within the meaning of the ADA and Illinois Human Rights Act, that Plaintiff's request was for a limited and definite period of time, that Plaintiff's request was reasonable, and that Plaintiff's accommodation request did not create an undue hardship on her employers.

75. As of May 16, 2016, Swanson and Defendants WHII and Medipro were also aware that the Plaintiff had requested an adjustment in her workplace involving a four week leave of absence until June 15, 2016, that the Plaintiff had requested an adjustment in her workplace involving a four week definite leave of absence until June 15, 2016 because of her medical conditions, and they each had enough information about the Plaintiff's medical conditions to determine whether to approve the Plaintiff's requested four week leave of absence.

76. The Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

77. Approving the Plaintiff's request to take a four week leave of absence until June 15, 2016 would not have been prohibitively expensive for her employers and would not have been unduly disruptive to the ordinary conduct of their business.

78. Approving the Plaintiff's accommodation request to take a four week leave of absence until June 15, 2016 did not involve an undue hardship on either WHII or Medipro and would not have involved an undue hardship on them.

79. Approving the Plaintiff's accommodation request would not have fundamentally altered the nature of the business of either WHII or Medipro, did not involve an undue cost or extensive or substantial disruption to the nature or operation of their business, or a fundamental alteration to the nature or operation of their business.

80. After accommodating the Plaintiff's requests for an accommodation between May 16, 2016 and June 6, 2016, on June 7, 2016 Swanson, WHII, and Medipro refused to accommodate her, and on June 7, 2016 sent her a letter terminating her employment as of June 1, 2016.

81. Between October 5, 2015 and June 7, 2016 the Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. #12101(2)(A), (2)(B), and 2(C) of the ADA.

82. Between October 5, 2015 and June 7, 2016 the Plaintiff had one or more impairments within the meaning of the ADA that substantially limited one or more of her major life activities within the meaning of the ADA. The Plaintiff also had a record of such an impairment.

83. The Plaintiff's impairments constituted a disability as that term is defined in the ADA.

84. At all pertinent times, the Plaintiff was qualified to perform the essential functions of her job, with or without a reasonable accommodation, within the meaning of the ADA and the Illinois Human Rights Act.

85. Since at least October 15, 2015 Swanson and the Defendants WHII and Medipro aware that the Plaintiff had a disability within the meaning of the ADA and the Illinois Human Rights Act.

86. Swanson and the Defendants were aware as of May 16, 2016 that the Plaintiff had requested to be accommodated by being given a four week leave of absence until June 15, 2016

87. Because of the Plaintiff's disability, the Defendants WHII and Medipro discriminated against the Plaintiff regarding her terms and conditions of employment, refused to

17

accommodate her, and retaliated against her because she requested to be accommodated pursuant to the ADA and the Illinois Human Rights Act.

88. The Defendants WHII and Medipro violated the ADA by discriminating against the Plaintiff, refusing to accommodate her, and retaliating against her for requesting accommodations, including discriminatorily and retaliatory discharging her.

89. By their conduct alleged herein, the Defendants engaged in unlawful employment practices on the basis of the Plaintiff's disability and in retaliation for her requests for an accommodation. Defendants engaged in this conduct in violation of the ADA.

90. The Defendants knew and/or showed reckless disregard for whether their conduct violated the ADA. The reasons that Defendants gave for her discharge were false and retaliatory.

91. The actions of the Defendants were taken deliberately and intentionally and with malice and reckless indifference to the Plaintiff's civil rights.

92. The acts complained of were ratified, authorized, and permitted by the Defendants and their officers, managers, and supervisors.

93. Because of the Defendants' discriminatory actions, refusal to accommodate, and retaliatory actions, the Plaintiff was damaged and has suffered the loss of wages and benefits, humiliation, embarrassment, and other compensatory damages.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendants and requests that the Court:

A. Declare, decree, and adjudge that the Defendants have violated the ADA;

B.	Grant an injunction against the Defendants and their officers, managers, and supervisors from violating the ADA and protecting the Plaintiff;

C.	Enter appropriate injunctive relief against the Defendants and their officers, managers, and supervisors to comply with the ADA and refrain from discriminating against and retaliating against and failing to accommodate the Plaintiff and interfering with her rights and protections under the ADA and awarding appropriate injunctive relief;

D.	Awarding the Plaintiff back pay, front pay, and other employment benefits she was denied or lost;

E.	Order the Defendants to pay compensatory and punitive damages in an amount sufficient to punish the Defendants for their past discrimination and to deter them from continuing with their unlawful practices;

F.	Award pre-judgment and post-judgment interest;

G.	Award the Plaintiff her reasonable attorney's fees and costs; and

H.	Award such other, additional and further relief as the Court deems appropriate under the circumstances, including nominal damages.

**JURY TRIAL DEMAND**

A jury trial is demanded on all counts which are triable by a jury.

Dated: 1/29/18

_s/ Marty Denis_
Marty Denis
Barlow, Kobata & Denis LLP
525 West Monroe, Suite 2360
Chicago, Illinois 60661
(312) 648-5570

*Attorneys for Plaintiff Jessica Spear*